UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DONALD ROBERT VIERHELLER,<br><br>    Petitioner,<br><br>  v.<br><br>SYLVIA GARCIA, Warden,<br><br>    Respondent. | Case No. EDCV 13-01087 TJH (AN)<br><br>**ORDER TO SHOW CAUSE RE DISMISSAL OF PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY AS TIME-BARRED** |

## I. BACKGROUND

Before the Court is a petition for writ of habeas corpus ("Petition") brought by Donald Robert Vierheller ("Petitioner"), a state prisoner represented by retained counsel. The Petition is brought pursuant to 28 U.S.C. § 2254 and raises five claims directed at Petitioner's December 1, 1999 conviction in the California Superior Court for San Bernardino County, as well as his admission to three prior strikes made the same day. Petitioner was convicted of carjacking, unlawfully taking a vehicle, and false imprisonment by violence, and after admitting the three prior strikes, was sentenced to an indeterminate term of 25 years to life (case no. FSB022291).

For the reasons set forth below, Petitioner is ordered to show cause why his Petition should not be dismissed with prejudice because it is considerably time-barred.

## II. DISCUSSION

### A. Standard of Review

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, requires a judge to "promptly examine" a habeas petition and "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Local Rule 72-3.2 of this Court also provides "[t]he Magistrate Judge promptly shall examine a petition for writ of habeas corpus, and if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief, the Magistrate Judge may prepare a proposed order for summary dismissal and submit it and a proposed judgment to the District Judge." C.D. Cal. R. 72-3.2. Further, an untimely habeas petition may be dismissed *sua sponte* if the court gives the petitioner adequate notice and an opportunity to respond. *Day v. McDonough*, 547 U.S. 198, 209-10, 126 S. Ct. 1675 (2006); *Herbst v. Cook*, 260 F.3d 1039, 1043 (9th Cir. 2001).

### B. Statute of Limitations

The Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which establishes a one-year statute of limitations for state prisoners to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). In most cases, the limitations period is triggered by "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

///
///
///
///
///
///

The face of the Petition, attached exhibits, and relevant state court records[1] establish the following facts. Petitioner was convicted of the above offenses on December 1, 1999, and sentenced on June 11, 2001. On July 10, 2002, the California Court of Appeal affirmed the judgment (case no. E029919). The California Supreme Court then denied review of the court of appeal's decision on September 25, 2002 (case no. S109152). Petitioner has not alleged, and it does not appear, that he filed a petition for certiorari with the United States Supreme Court. (Pet. at 2-3, Exs. A&C; state court records.)

Therefore, for purposes of AEDPA's limitations period, Petitioner's judgment became final on December 24, 2002, the ninetieth day after the state high court denied his petition for review and the last day for him to file a petition for certiorari with the Supreme Court. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). The statute of limitations then started to run the next day, on December 25, 2002, and ended a year later on December 25, 2003. 28 U.S.C. § 2244(d)(1)(A); *see also Patterson v. Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Petitioner's retained counsel did not file his pending Petition until June 19, 2013 -- 3,464 days after the expiration of the limitations period. Accordingly, absent some basis for tolling or an alternative start date to the limitations period under 28 U.S.C. § 2244(d)(1), the pending Petition is considerably time-barred.

///

///

---

[1] The Court takes judicial notice of Internet records relating to this action in the San Bernardino Superior Court (available at http://openaccess.sb-court.org), and in the state appellate courts (available at http://appellatecases.courtinfo.ca.gov) ("state court records"). *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (federal courts may take judicial notice of related state court documents), *overruled on other grounds as recognized in Cross v. Sisto*, 676 F.3d 1172 (9th Cir. 2012).

### C.  Statutory Tolling

AEDPA includes a statutory tolling provision that suspends the limitations period for the time during which a "properly-filed" application for post-conviction or other collateral review is "pending" in state court. 28 U.S.C. § 2244(d)(2); *Waldrip v. Hall*, 548 F.3d 729, 734 (9th Cir. 2008); *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005). An application is "pending" until it has achieved final resolution through the state's post-conviction procedures. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S. Ct. 2134 (2002). However, to qualify for statutory tolling, a state habeas petition must be filed before the expiration of AEDPA's limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); *see also Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition [] that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

The face of the Petition, attached exhibits, and relevant state court records establish Petitioner filed three state habeas petitions, one in the appellate division of the San Bernardino Superior Court, one in the state court of appeal (case no. E057482), and one in the California Supreme Court (case no. S208546), all of which were dismissed or denied. (Pet. at 3-5, Ex. E; state court records.) However, the first of those petitions was not filed until August 30, 2012 (Pet. at 3), 3,171 days after AEDPA's limitations period expired on December 25, 2003. As a result, Petitioner is not entitled to any statutory tolling. *Ferguson*, 321 F.3d at 823; *Webster*, 199 F.3d at 1259.

### D.  Alternative Start of the Statute of Limitations

#### 1.  State-Created Impediment

In rare instances, AEDPA's one-year limitations period can run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was

prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that the statute of limitations was delayed by a state-created impediment requires establishing a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). The Petition does not set forth any facts for an alternate start date of the limitations period under this provision.

### 2. Newly Recognized Constitutional Right

AEDPA provides that, if a claim is based upon a constitutional right that is newly recognized and applied retroactively to habeas cases by the United States Supreme Court, the one-year limitations period begins to run on the date which the new right was initially recognized by the Supreme Court. 28 U.S.C. § 2244(d)(1)(C). The Petition does not set forth any facts for an alternate start date of the limitations period under this provision.

### 3. Discovery of Factual Predicate

AEDPA also provides that, in certain cases, its one-year limitations period shall run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D); *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012). The Petition does not set forth any facts for an alternate start date of the limitations period under this provision.

### E. Equitable Tolling

AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, --- U.S. ---, 130 S. Ct. 2549, 2560 (2010). Specifically, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005); *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079 (2007).

///
///

However, "[e]quitable tolling is justified in few cases" and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (*quoting Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)). Additionally, although "we do not require [the petitioner] to carry a burden of persuasion at this stage in order to merit further investigation into the merits of his argument for [equitable] tolling," *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003), "[w]here the record is amply developed, and where it indicates that the [alleged extraordinary circumstance did not] cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations . . . ." *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010); *see also Elmore v. Brown*, 378 Fed. Appx. 664, 666 (9th Cir. 2010) ("[W]here the record is sufficient to permit the district court - and us on appeal - to evaluate the strength of the petitioner's [equitable tolling] claim, the district court does not necessarily abuse its discretion if it denies the petitioner a hearing.") (cited pursuant to 9th Cir. R. 36-3).

The Petition does not set forth any facts for equitable tolling.

### F. Alleged Actual Innocence

Lastly, although Petitioner does not specifically argue that the Court should consider the merits of his time-barred claims on the basis of actual innocence, the Petition attempts to assert a freestanding claim of "actual innocence." (Pet., Question Presented D; Memorandum of Points and Authorities ("Mem.") at 25-26; Ex. B.)

Under *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). However, "[i]n order to present otherwise time-barred claims to a federal habeas court under *Schlup*, a petitioner must produce sufficient proof of

his actual innocence to bring him within the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Id.* at 937 (internal quotation marks and citations omitted). While a petitioner is not required to proffer evidence creating an "absolute certainty" about his innocence, the *Schlup* gateway is an "exacting standard" that permits review only in the "extraordinary case." *Id.* at 938; *see also House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064 (2006). Specifically, Petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee*, 653 F.3d at 938; *Schlup*, 513 U.S. at 327. The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Lee*, 653 F.3d at 938-39; *Schlup*, 513 U.S. at 316. Further, Petitioner must support his allegations "with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.

In support of his actual innocence claim, Petitioner attaches the declaration of an individual named Stephanie Quintana, whose relationship to this case is unexplained. According to Quintana's declaration, she personally contacted Petitioner's codefendant, Anthony Hernandez, in a Facebook private message, on January 7, 2012. Quintana then alleges that during subsequent conversations via Facebook message, by phone, and apparently once over dinner on May 19, 2012, Hernandez told her he alone carjacked the victim, and that Petitioner was unaware Hernandez intended to get into the victim's car and drive away (Petitioner was convicted as an aider and abettor). Hernandez also allegedly told Quintana that at the time he carjacked the victim, Petitioner was walking toward his own vehicle, and he never knew what was happening, nor did he participate. Finally, Quintana states that Hernandez is unwilling to personally sign a declaration making these assertions because he fears retribution from his criminal street gang. (Pet., Ex. B.) Petitioner argues that since Hernandez was never called to testify at his trial, the jury never

learned his version of events, but that Quintana's declaration is evidence Hernandez has since "made repeated statements to a third-party which would tend to exculpate Petitioner." (Mem. at 25.)

Petitioner's assertion of actual innocence falls grossly short. First, it is based upon inadmissible hearsay, the credibility of which is questionable - putting it gernerously, not "new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324. Second, even if Hernandez did make the statements Quintana claims he made, they would not come close to overcoming the evidence at trial, which established that Petitioner personally blocked the victim with his car, and then got out of his own car and angrily confronted him. Then, *while Petitioner was standing at the victim's driver's side window*, Hernandez got out of the back seat of Petitioner's car with one hand behind his back and demanded that the victim " "get out of the f---ing car and start walking." When the victim exited his car, he thought Petitioner was going to hit him because his fists were clenched and he "appeared to be very angry." The victim looked back when he was a safe distance away, and saw Hernandez get into the victim's car, while Petitioner got back into his own car, and both drove away. *See People v. Vierheller*, No. E029919, 2002 WL 1473115, at *1-2 (Cal. Ct. App. July 10, 2002). Consequently, Petitioner has not even remotely shown "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee*, 653 F.3d at 938; *Schlup*, 513 U.S. at 327.

Indeed, at trial, the defense called Petitioner's friend, Steve Cruz, who was the front seat passenger in Petitioner's car during the incident, and Cruz testified Petitioner only confronted the victim because he thought he gave him a dirty look, but that Hernandez then carjacked the victim to the surprise of both Cruz and Petitioner. *Vierheller*, 2002 WL 1473115, at *2. The jury clearly did not believe Cruz's version of events, and there is no reason to conclude they would have found Cruz more credible if Hernandez had given them the same story. Put another way, under the circumstances, "[a]ssessing 'how reasonable [factfinders] would react to the overall,

newly supplemented record,'" it is highly unlikely "every juror would have reasonable doubt that [Petitioner] was guilty." *Chestang v. Sisto*, No. 09-17621, --- Fed. Appx. ----, ----, 2013 WL 2489963, at *2 (9th Cir. June 11, 2013) (cited pursuant to 9th Cir. R. 36-3) (*quoting Lee*, 653 F.3d at 929).

Third, "actual innocence claims focus on 'new' evidence - i.e., 'relevant evidence that was either excluded or unavailable at trial.'" *Id.* (*quoting Schlup*, 513 U.S. at 327-28). In this case, while Quintana's hearsay declaration is ostensibly "new" as of 2012, it concerns events that took place in 1999, and which were clearly within Petitioner's knowledge. That is, if the facts Hernandez now ostensibly alleges were true, Petitioner was aware of those facts at the time of the carjacking. *Id.*; *see also McQuiggin v. Perkins*, --- U.S. ----, ----, 133 S. Ct. 1924, 1935 (2013) ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.").

As a result, Petitioner has not presented a credible claim of actual innocence such that he "may pass through the *Schlup* gateway and have his otherwise time-barred claims heard on the merits." *Lee*, 653 F.3d at 932.

## ORDER

Based on the foregoing, the Court finds this action is untimely. Accordingly, Petitioner shall have until **July 12, 2013**, to file a written response and show cause why his Petition should not be dismissed with prejudice because it is time-barred. In responding to this Order, Petitioner must show by declaration and any properly authenticated exhibits what, if any, factual or legal basis he has for claiming that the Court's foregoing analysis is incorrect, or that AEDPA's one-year statute of limitations should be tolled, or the start date extended.

**Petitioner is warned that if a timely response to this Order is not made, Petitioner will waive his right to respond and the Court will, without further notice, issue an order dismissing the Petition, with prejudice, as time-barred.**

///

1 |     Further, if Petitioner determines the Court's analysis is correct and the
2 | Petition is time-barred, he should consider filing a Request for Voluntary
3 | Dismissal of this action pursuant to Fed. R. Civ. P. 41(a)(1) in lieu of a response.

5 |     IT IS SO ORDERED.

7 | DATED: June 21, 2013

                                      ARTHUR NAKAZATO
                          UNITED STATES MAGISTRATE JUDGE